# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### SAN ANGELO DIVISION

|  |  |  |
|---|---|---|
| | § | |
| **MARIAN L. RICH,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 6:05-CV-0066-C** |
| | § | **ECF** |
| | § | **Referred to the U.S. Magistrate Judge** |
| **MICHAEL J. ASTRUE[1],** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the court upon Plaintiff's complaint filed September 16, 2005,

for judicial review of the administrative decision of the Commissioner of Social Security denying

Plaintiff's applications for a period of disability and disability insurance benefits under Title II of

the Social Security Act.  Plaintiff filed a brief[2] in support of her complaint on January 30, 2006, and

Defendant filed her brief on March 30, 2006.  The United States District Judge, pursuant to

28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and

recommendation, proposed findings of fact and conclusions of law, and a proposed judgment.  This

court, having considered the pleadings, the briefs, and the administrative record, recommends that

---

[1]   Michael J. Astrue has been appointed as the new Commissioner of Social Security, effective February 12, 2007, and is therefore substituted as Defendant in this matter for Jo Anne B. Barnhart, per FED. R. CIV. P. 25(d)(1).

[2]   According to the order dated February 2, 2006 (Doc. 15), Plaintiff's Motion for Summary Judgment and Supporting Memorandum (Doc. 14) is considered to be Plaintiff's Brief.

the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

## I.   STATEMENT OF THE CASE

Plaintiff filed an application for a period of disability and disability insurance benefits on October 2, 2002, alleging disability beginning August 1, 1996.  Tr. 11, 107-08.  Plaintiff's application was denied initially and upon reconsideration.  Tr. 25-28, 31-35.  Plaintiff filed a Request for Hearing by Administrative Law Judge on May 6, 2003, and this matter came for hearing before the Administrative Law Judge ("ALJ") on April 28, 2004.  Tr. 11, 23-24, 215-40.  Plaintiff, represented by an attorney, testified in her own behalf.  Tr. 219-39.  At the hearing, Plaintiff requested that her alleged onset date be amended to December 10, 1999.  Tr. 11.  The ALJ issued a decision unfavorable to Plaintiff on August 16, 2004.  Tr. 9-17.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.  He found that:  Plaintiff met the disability insured status requirements on December 10, 1999, through September 30, 2002, and Plaintiff had not engaged in substantial gainful activity at any time since December 10, 1999.  Tr. 12.  Plaintiff had lumbar and cervical discopathy, which in combination were considered "severe" impairments.  *Id*.  Plaintiff's impairments, singularly or in combination, were not listed in, and did not equal in severity any impairments listed in, the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  *Id*.  Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ acknowledged that he considered the element of pain in making Plaintiff's RFC assessment and that he evaluated her subjective complaints as required in 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p.  Tr. 13.  He noted Plaintiff's testimony of experiencing pain so severe

as to preclude all levels of work activity. *Id.* He noted, however, that prior to Plaintiff's last date insured, there was very little evidence showing any objective abnormalities as a result of physicial examinations. *Id.* He noted that Plaintiff complained of neck and low back pain and did not report neck or upper back pain until July 2001. *Id.* He noted her reports of intermittent leg and upper back pain. *Id.* He noted that Dr. James C. Womack, Plaintiff's treating physician, wrote a note in April 2001 indicating that Plaintiff was unable to continue a martial arts class due to low back pain. Tr. 14. He noted that lumbar and cervical x-rays were essentially within normal limits. *Id.* The ALJ noted the report of Dr. John L. Read, the consultative examiner ("CE"), who indicated that Plaintiff reported that she tried to walk six blocks daily, could sit for 90 minutes, could lift 10 to 15 pounds and could carry 20 pounds for short distances, and could handle small objects without difficulty unless she experienced hand cramps. *Id.* The ALJ also noted Plaintiff's report of quitting work to care for her mother. *Id.*

The ALJ found that Plaintiff had an underlying medically determinable impairment that could reasonably have been expected to cause the pain and functional limitations alleged prior to her date last insured. Tr. 13. However, the ALJ ultimately found that Plaintiff's statements concerning the severity of her functional limitations and pain were not reasonably supported by the credible medical evidence. *Id.*

The ALJ found that Plaintiff retained the RFC to perform the full range of light work, limited to jobs that do not require more than occasionally climbing ramps and stairs and that do not require climbing ladders or scaffolds. Tr. 15. Plaintiff's past relevant work as a medical records clerk did not require the performance of work-related activities precluded by the above limitations, and the ALJ found that Plaintiff could return to her past relevant work. Tr. 16-17. Therefore, the ALJ found that the Plaintiff was not disabled at any time through the date she was last insured. Tr. 17.

Plaintiff submitted a Request for Review of Hearing Decision/Order on September 13, 2004. Tr. 7-8.  After granting a 25-day extension for the submission of additional evidence, the Appeals Council issued its opinion on July 15, 2005, indicating that although it had considered the contentions raised in Plaintiff's Request for Review and the additional evidence, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 3-6, 6E.  The ALJ's decision, therefore, became the final decision of the Commissioner.

On September 16, 2005, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.    STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards.  *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)).  Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve."  *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful

activity.  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.  *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453.  In this case, the ALJ found at step 4 that Plaintiff was not disabled because she could return to her past relevant work.  Tr. 17.

## III.   DISCUSSION

Plaintiff argues that the ALJ's basis for rejecting the functional capacity opinions of Plaintiff's treating physician and the CE is unsupported by substantial evidence. Plaintiff further argues that the ALJ erred in making his credibility finding as to Plaintiff's subjective complaints of disabling pain.  Plaintiff asks that this matter be reversed and remanded for either an award of benefits or for a new hearing.

**A.     Whether the ALJ erred by failing to give appropriate weight to the opinions of Plaintiff's treating physician and the CE and by failing to recontact these physicians.**

Plaintiff argues that the ALJ erred by failing to give appropriate weight to the opinions of her treating physician and the CE as to the limitations imposed by her impairments.  Plaintiff further argues that the ALJ erred by failing to recontact these physicians before failing to give any weight to their opinions.  Plaintiff alleges that the ALJ's determination that such opinions should not be given much weight was not supported by substantial evidence.  The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Plaintiff correctly notes that a treating doctor's opinion is to be given great weight.  The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability.  A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2).  On the other hand,  "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."  *Newton*, 209 F.3d at 456.

Plaintiff argues that the ALJ erred by failing to give appropriate weight to the opinions of her treating physician, Dr. Womack, and of the CE, Dr. Read, as to the limitations imposed by her impairments demonstrated by the questionnaires completed by these physicians.

Dr. Womack, Plaintiff's treating physician, completed a Lumbar Spine Impairment Questionnaire on July 22, 2003.  Tr. 174-80.  Dr. Womack noted his diagnosis of lumbar discopathy.[3]  Tr. 174.  He opined that Plaintiff's prognosis was fair.  *Id*.  He indicated that the clinical findings that demonstrated his diagnosis included muscle spasm of the lower back.  *Id*.  Dr. Womack noted that there were no diagnostic or laboratory test results which supported this diagnosis.  Tr. 175.  He reported Plaintiff's symptoms as pain, weight loss, and muscle spasms.  *Id*.  He noted that Plaintiff has constant sharp pain in her lower back and legs.  Tr. 176.  He opined that Plaintiff could sit for one hour and could stand/walk for up to an hour during an eight-hour work day.  *Id*.  He indicated that Plaintiff should move around every hour for 15 minutes.  Tr. 177.  Dr.

---

[3]       Discopathy is defined as "[d]isease of a disk, particularly of an invertebral disc." STEDMAN'S MEDICAL DICTIONARY (27thed. 2000) at 508.

Womack indicated that Plaintiff could occasionally lift and carry up to 10 pounds. *Id.* He indicated that Plaintiff's pain or other symptoms would frequently be severe enough to interfere with attention and concentration. Tr. 178. Dr. Womack indicated that Plaintiff was capable of low stress jobs but did not indicate the basis for his conclusions. *Id.* He opined that Plaintiff would need 15 minute rest breaks every hour, that her condition interfered with the ability to keep the neck in a constant position, that Plaintiff could perform a full time job that required such activity on a sustained basis, and that her impairments were likely to produce good and bad days. Tr. 179. He indicated that Plaintiff had "psychological limitations" and should avoid temperature extremes and humidity. *Id.* He also indicated that Plaintiff should not perform pulling, pushing, kneeling, bending, or stooping. *Id.* Dr. Womack did not indicate the "earliest date that the description of symptoms and limitations" applied to Plaintiff. *Id.*

Dr. Womack also completed a Cervical Spine Impairment Questionnaire on July 22, 2003. Tr. 182-88. In this questionnaire, he indicated his diagnosis of cervical and lumbar discopathy. Tr. 182. He indicated that: Muscle spasm of the lower back and neck were the positive clinical findings that supported his diagnosis. Tr. 182-83. There were no laboratory or diagnostic test results to support his diagnosis. Tr. 183. Plaintiff's symptoms included pain, weight loss, and numbness in both arms. *Id.* Plaintiff has acute pain in the back and neck which was constant. Tr. 183-84. A "ruptured disc in [the] neck" was the precipitating factor leading to the pain. Tr. 184. Plaintiff's condition did interfere with the ability to keep the neck in a constant position. *Id.* Plaintiff could *not* do a full time competitive job that required such activity on a sustained basis. Tr. 185. Dr. Womack opined that Plaintiff could sit for one hour and stand/walk for up to an hour per 8-hour work day, should get up and move around for 15 minutes every hour, and could lift and carry up to 10 pounds occasionally. Tr. 185. Plaintiff's constant pain caused depression. Tr. 186. Plaintiff's experience of pain or other symptoms would frequently be severe enough to interfere with

-7-

attention and concentration.  *Id.*  Plaintiff could tolerate low work stress.  *Id.*  Plaintiff has

"significant limitations in repetitive reaching, handling, fingering or lifting" but no specific degree

of limitation in grasping, turning, or twisting objects; using fingers/hands for fine manipulations;

or using arms for reaching.  Tr. 187.  Plaintiff would need to take 15-minute unscheduled breaks

every hour and would experience good and bad days.  *Id.*  Dr. Womack again noted psychological

limitations, the need to avoid temperature extremes and humidity, and that Plaintiff should engage

in no pushing, pulling, kneeling, bending, or stooping.  Tr. 188.  He opined that the noted limitations

and symptoms applied as of December 10, 1999.  *Id.*

Dr. Womack's progress notes indicate that Plaintiff reported pain in the thoracic and lumbar

region for two weeks with no known injury on December 10, 1999.  Tr. 173.  Dr. Womack's

diagnosis through September 8, 2000, was low back strain.  Tr. 166-72.  He changed his diagnosis

to lumbar discopathy on October 9, 2000.  Tr. 165.  Plaintiff was also treated for acute sinusitis on

various occasions.  On April 18, 2001, Dr. Womack wrote a note indicating that Plaintiff "is unable

to continue martial arts class due to low back pain."  Tr. 158.   Dr. Womack continue to treat

Plaintiff for low back pain and on January 30, 2001, noted Plaintiff's report of upper and lower back

pain, as well as intermittent right leg pain.  Tr. 154.  On August 30, 2001, Dr. Womack noted

Plaintiff's report of intermittent upper back pain, as well as low back pain and aches in her knees.

Tr. 153.  He noted on September 25, 2001, that Plaintiff's knees were doing better.  Tr. 152.  On

February 18, 2002, Dr. Womack noted that Plaintiff's low back pain was somewhat better, although

her neck pain was worse.  Tr. 147.  He also indicated a diagnosis of cervical discopathy.  *Id.*

Plaintiff continued to be treated by Dr. Womack on approximately a monthly basis for her

continuing complaints of low back pain, neck pain, and sinusitis.  Tr. 130-146.  On May 29, 2003,

Dr. Womack noted that Plaintiff was losing weight and reported that she was depressed.  Tr. 130.

Dr. Read, the CE, performed his examination on December 2, 2002.  Tr. 115-21.  Dr. Read described Plaintiff's report of her history and symptoms, including back and neck pain for the previous seven or eight years, feeling "extremely restless" by nightfall, and needing to change her position frequently.  Tr. 115.  He noted Plaintiff's report of being unable to sit too long because of such restlessness and having difficulty sleeping at night.  *Id.*  Dr. Read noted Plaintiff's report of pain which radiates down her thoracic spine.  Tr. 116.  He noted her report of temporary relief with steroid injections.  *Id.*  Upon examination, he noted that:  Plaintiff was small and thin and appeared stoic, although appropriately oriented.  Tr. 118.  Plaintiff's deep tendon reflexes were active and equal, with fairly good muscle tone, normal gate, normal sensory perception, and normal speech, cerebration, and motor function.  *Id.*  X-rays of the lumbar spine indicated a mild endplate irregularity at T11 and T12, probably related to degenerative disc disease.  Tr. 119.  The x-rays were otherwise unremarkable.  *Id.*

Dr. Read noted Plaintiff's report of being able to walk six blocks and trying to do so on a daily basis; being able to sit about 90 minutes; and her ability to be up and about for "half a day," to lift 10 or 15 pounds and to carry 20 pounds held closely to her body for short distances, to handle small objects without difficulty except when experiencing cramping in her hands and fingers, and to drive.  *Id.*  Dr. Read also noted that: Coordination as well as range of motion in the upper and lower extremities was normal.  *Id.*  Plaintiff was able to walk well in tandem, walked poorly on her toes and heels, but was able to hop fairly well.  *Id.*  Plaintiff was able to squat, although she needed help in getting up.  *Id.*  He noted no persistent disorganization of motor function.  Tr. 120.  Dr. Read indicated his diagnosis of polymyalgia and  mild degenerative disc disease at T11-T12.  *Id.*  Dr. Read appended his report with a copy of the lumbar spine x-ray report.  Tr. 121.

Dr. Read completed a second consultative examination on June 22, 2004.  Tr. 199-208.  He noted Plaintiff's report of symptoms including daily headaches at the base of her neck, arthritis of

the hands, and low back pain.  Tr. 200.  Dr. Read noted that upon examination, Plaintiff was extremely thin and was appropriately oriented.  Tr. 202.  He noted spasm of the paravertebral muscles.  Tr. 203.  He noted active deep tendon reflexes at 2+; grip of 4/5 in the right and 3/5 in the left; slow but essentially normal gait; and normal cerebration, speech, cranial nerves, and motor function.  *Id*.  He noted that x-rays of the cervical spine, appended to his report, indicated that the vertebral bodies were intact, with adequate alignment, and well-maintained disc spaces.  Tr. 204. Dr. Read opined that the x-ray results for her cervical spine were normal and indicated that an MRI might be required to confirm any possible cervical radiculitis.  Tr. 205.

Dr. Read noted Plaintiff's report of being able to sit for 15 minutes, being able to stand for 5 minutes, being up and about for half a day, and being able to lift and carry 20 pounds for short distances.  *Id.*  He specifically noted that Plaintiff "has no problem handling small objects" except when she experiences cramping in the right hand.  *Id*.

Dr. Read also completed a statement as to Plaintiff's limitations.  Tr. 209-13.  In this statement, Dr. Read indicated that:  Plaintiff could lift or carry up to 20 pounds occasionally and less than 10 pounds frequently.  Tr. 209.  Plaintiff could stand/walk for less than two hours during an 8-hour work day because it "causes pain in neck, arms, head based on history and physical exam." *Id*.  Plaintiff must periodically alternate between sitting and standing and was limited in pushing and pulling of the upper extremities.  Tr. 210.  Plaintiff can frequently climb ramps/stairs/ladders/ ropes/scaffolds, balance, and stoop; could occasionally kneel and crouch; and should never crawl. *Id*.  Plaintiff was limited in reaching in all directions, in handling, and in fingering, but she could occasionally perform each of these manipulative functions.  Tr. 211.  He also noted that according to Plaintiff, she was limited in her ability to be around temperature extremes; noise; hazards; and fumes, odors, chemicals, and gases.  Tr. 212.

-10-

In his opinion the ALJ noted that Plaintiff last met the earnings requirement for disability insurance benefits on September 30, 2002. Tr. 12. Therefore, Plaintiff must show that any disability began as of or prior to her date last insured *Id.* In evaluating Dr. Womack's opinion, the ALJ noted that Plaintiff began receiving medical treatment for middle and lower back pain in December 1999. *Id.* He noted that Plaintiff reported pain going down her legs since May 2000 and upper back pain in July 2001. *Id.* He noted that since her date last insured, Plaintiff has continued to complain of neck and low back pain with upper and lower radicular symptoms. *Id.* The ALJ noted that Dr. Womack completed the interrogatories in July 2003. Tr. 15. He noted that Dr. Womack opined that Plaintiff had significant work-related limitations as a result of her impairments. *Id.* He noted that these limitations were not supported by any of Dr. Womack's progress notes, nor by any other examinations of the Plaintiff. *Id.* The ALJ noted that these interrogatories were completed almost a year after Plaintiff's date last insured and that the interrogatories were inconsistent, as Dr. Womack indicated that Plaintiff *could* perform a full-time competitive job on a sustained basis which required Plaintiff to keep her neck in a constant position; Dr. Womack answered "no" to the same question on the second interrogatory. *Id.*

The ALJ found that Dr. Womack's opinions were not at all supported by medically acceptable clinical and laboratory diagnostic techniques and therefore gave them "very little weight in evaluating [Plaintiff's] residual functional capacity for the period of time up to her date last insured." Tr. 15-16.

Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 404.1527(d). The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist." *Newton,* 209 F.3d at 456. Thus, the ALJ is required to consider the six factors if he

declines to give the opinion of a treating specialist any weight.  Pursuant to Soc. Sec. Ruling 96-2p(July 2, 1996)("SSR 96-2p"), and 20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight.  The requirement that the ALJ discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled.  *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).  In this case the ALJ found that Dr. Womack's opinion was not entitled to very great weight because it was not supported by acceptable clinical and laboratory diagnostic techniques and was not consistent with or supported by his own progress notes.

While the opinions of a claimant's treating physician are "entitled to great weight," the ALJ can decrease reliance on treating physician testimony only for "good cause" shown.  *Paul v. Shalala*, 29 F.3d 208, 210-11 (5th Cir. 1994).  Good cause for abandoning the treating physician's rule has been held to include "disregarding statements [by the treating physicians] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence.  *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995).

As noted above, the ALJ is permitted to "discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."  *Newton*, 209 F.3d 456.  SSR 96-2p provides that a medical source statement from a treating source which is well-supported by medically acceptable evidence and which is not inconsistent with other substantial evidence in the record is entitled to controlling weight.  *See* SSR 96-2p.  This ruling further explains:

> If any of the above factors is not satisfied, a treating source's opinion cannot be entitled to controlling weight.  It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by

medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.

SSR 96-2p.  Here, the ALJ found that Dr. Womack's opinions as to the limitations imposed by Plaintiff's impairments was not well-supported and that these opinions were inconsistent with other substantial evidence in the record.  Indeed, a review of Dr. Womack's progress notes indicates, and was noted by the ALJ, that Plaintiff repeatedly reported low back and neck pain, but these notes contain no evidence indicating the limitations noted by Dr. Womack in the questionnaires he completed.  In a letter dated April 7, 2004, Dr. Womack noted that Plaintiff had been treated by him "once per month on a regular basis for her medications."  Tr. 214.  Dr. Womack indicated on both questionnaires that there were no laboratory or diagnostic techniques which demonstrate or support his diagnosis.  Tr. 175, 183.  He noted that the only clinical finding to support his diagnosis was muscle spasm of the lower back and neck.  Tr. 174, 183.  Although he indicated that the precipitating factors leading to Plaintiff's pain included a "ruptured disc in [her] neck," none of his progress notes nor the other medical evidence in the record indicated a ruptured disk.  Dr. Womack noted that other than medication, no other treatment (including surgery or physical therapy) was provided.  Tr. 178, 186.  On one questionnaire, he indicated that Plaintiff could perform a full time competitive job that required her to keep her neck in a constant position and indicated "N/A"  for the earliest date that the description of symptoms and limitations from the lumbar discopathy applied.  Tr. 179.  On the second questionnaire, dealing with Plaintiff's cervical impairment, Dr. Womack indicated that the earliest date that the description of symptoms and limitations applied was December 10, 1999, the date he first treated Plaintiff, even though his progress notes indicated a complaint of upper and lower back pain on July 30, 2001, and neck pain on February 18, 2002, with a diagnosis of cervical discopathy, as well as lumbar discopathy on that date.  Tr. 147, 154, 188.  Although Dr. Womack noted weight loss as one of Plaintiff's symptoms, the record indicates that

Plaintiff's steady weight loss occurred after her date last insured. Although Dr. Womack opined that Plaintiff had significant limitation in doing repetitive reaching, handling, fingering, or lifting, he did not indicate the degree of limitation on the various types of use of the upper extremities noted on the questionnaire. Tr. 187. Moreover, Plaintiff indicated that she is able to "hold a coffee [c]up without dropping it" and also testified that she is able to drive, cook simple meals, vacuum, and do the dishes. Tr. 55, 226-28. In finding that the limitations indicated in Dr. Womack's opinions were not well-supported, the ALJ discussed the internal inconsistencies between such opinions, the lack of abnormalities shown on the lumbar and cervical x-rays, and the notation by the CE indicating that upon physical examination, Plaintiff had a normal gait, fairly good muscle tone, normal sensation in the lower extremities, full range of motion of the upper and lower extremities, and normal motor function. Tr. 13.

The ALJ ultimately found that Plaintiff's back and neck pain imposed some limitations on her ability to work prior to December 10, 1999, but did not "preclude all levels of work activity." Tr. 15. He found that she retained the RFC to perform the full range of light work, except that she could only occasionally climb ramps and stairs and could not climb ladders or scaffolds. *Id.*

The regulations provide:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR § 404.1567(a). The ALJ found that Plaintiff's past relevant work as a medical records clerk did not require the performance of work-related activities precluded by such limitations. Tr. 16. Plaintiff indicated in her work history report that in the course of her past work as a medical records

clerk, she lifted less than 10 pounds; walked, stood, climbed, and stooped for 1/4 hour each per day; sat for seven hours per day; and wrote, typed, or handled small objects for seven hours per day.  Tr. 64.

Dr. Read opined that Plaintiff could "lift 10 or 15 pounds" and could "carry 20 pounds for short distances."  Tr. 119.  Dr. Womack opined that Plaintiff could lift and carry up to 10 pounds. Tr. 185.  Plaintiff testified that: At her meat market job she was able to lift 20 pounds. Tr. 221.  She required the assistance of her husband or son when having to lift up to 80 pounds.  *Id.*  In attempting to walk six blocks, she would walk three hours with stops.  Tr. 225.  She can walk 20 minutes while grocery shopping.  Tr. 227.  She vacuums one room per day, drives around town once or twice per week, washes dishes for 10 or 15 minutes, does laundry slowly, and cooks simple things.  Tr. 226-28.  She requires assistance in getting in and out of the bathtub.  Tr. 227.  She is able to sit for 15 minutes in one place continuously.  Tr. 229.  She cannot bend over very much.  Tr. 235.  She squats at times.  *Id.*

The record demonstrates that Dr. Womack's opinions, as set forth in the questionnaires, were inconsistent with each other, were inconsistent with his treatment notes, and were inconsistent with Plaintiff's testimony and reports of her own activities and abilities.  The record further demonstrates that the ALJ's RFC finding is supported by substantial evidence in the record, including Dr. Read's opinion that Plaintiff could lift up to 20 pounds, Plaintiff's testimony that she had been able to lift 20 pounds at her previous job, and Plaintiff's own reports and testimony of her activities.  The ALJ did note that muscle spasm was found by Dr. Womack as well as Dr. Read.  However, this finding upon examination does not constitute substantial evidence to support the numerous limitations included in Dr. Womack's opinions.  Moreover, Dr. Womack failed to indicate the degree of limitation in the use of the upper extremities, despite indicating that Plaintiff had substantial limitation in that area.  While Plaintiff takes issue with the ALJ's indication that the ability to

participate in a martial arts class between December 1999 and April 2001 is "inconsistent with [Plaintiff's] allegations of disabling pain," the record includes the note from Dr. Womack dated April 18, 2001, indicating that Plaintiff should not continue martial arts classes due to low back pain. Tr. 158. The ALJ appropriately considered the evidence as a whole in finding that Dr. Womack's opinion as to the limitations imposed by Plaintiff's impairments was not well-supported by the evidence of record.

"The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790. I find that the ALJ did not err in considering or weighing the opinion of Dr. Womack. I further find that his determination that Dr. Womack's opinions were not well-supported is supported by substantial evidence in the record.

Plaintiff further argues that the ALJ failed to appropriately consider the opinions of Dr. Read, the CE. The record demonstrates that the ALJ discussed both of Dr. Read's consultative examinations and his findings upon physical examination. Tr. 12-13. Clearly, Dr. Read's second examination and assessment occurred nearly two years after Plaintiff's date last insured. Moreover, Dr. Read himself noted that much of the information in his report was related by Plaintiff. Tr. 199-202. While he indicated that Plaintiff could stand/walk less than two hours during an 8-hour day, he noted upon physical examination that Plaintiff's deep tendon reflexes were active; no tremor was noted; gait was essentially normal; sensory perception over the shins was normal; and motor

function was normal.  Tr. 203, 209.  Dr. Read indicated that Plaintiff must alternate between sitting or standing and further opined that Plaintiff was limited in the use of her upper extremities; he indicated no medical or clinical findings to support his conclusion except "history and physical exam."  Tr. 210.   He also did not describe the nature and degree of limitation beyond noting that pushing or pulling "causes mid back pain according to H + P," ostensibly, according to history and exam.  *Id.*        Plaintiff correctly argues that Dr. Read repeatedly noted that the limitations indicated are based on "history and physical exam."   However, as the ALJ correctly noted, Dr. Read's actual findings upon physical examination indicated that Plaintiff's range of motion was normal in all joints, she was able to squat with difficulty, she walked fairly well in tandem, she had moderate spasm of the paravertebral muscle, gait was normal, and motor function was normal.  Tr. 203. Although Dr. Read indicated various limitations on the upper extremities, he noted that Plaintiff's grip was 4/5 on the right and 3/5 on the left.  Tr. 203.  Moreover, as Dr. Read noted, Plaintiff's x-rays were normal.  Tr. 205.  The ALJ noted such inconsistencies in his opinion and in explaining the reasons for giving Dr. Read's opinion as to the limitations imposed by Plaintiff's impairments very little weight.

I find that the ALJ appropriately considered the record as a whole in determining the weight to give to the opinions of the CE.  The ALJ correctly noted in his opinion that the limitations noted by Dr. Read were not supported by his specific findings upon physical examination and also noted that much of Dr. Read's opinion reflected Plaintiff's subjective complaints.

The ALJ did not err by failing to appropriately consider or weigh the opinions of Plaintiff's treating physician or the opinion of the CE.  His determination as to the weight given to such opinions is supported by substantial evidence in the record.

**B.      Whether the ALJ erred by failing to recontact Plaintiff's treating physician or the CE.**

Plaintiff further argues that the ALJ erred by failing to recontact her treating physician or the CE before determining to give their opinions as to the limitations imposed by her impairments very little weight.

Failure to recontact a medical source may constitute reversible error.  In *Ripley*, the Commissioner's decision was reversed and the matter remanded with instructions to obtain a report from a treating physician when the evidentiary record contained no medical source evidence whatsoever regarding the effects of the claimant's impairment on his ability to work.  *See Ripley v. Chater*, 67 F.3d 552, 557-58 (5th Cir. 1995).  In *Myers*, the Commissioner's decision was reversed and remanded where the ALJ had "summarily rejected the opinions of [the claimant's] treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant." *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001).

Applicable case law in the Fifth Circuit requires remand for failure to recontact a treating physician when the physician's records are inconclusive or otherwise inadequate to receive controlling weight, the record contains no other medical opinion evidence based on personal examination or treatment, and the claimant proves prejudice.  *Newton*, 209 F.3d at 453.  Thus, the duty to recontact a claimant's treating medical source is limited to cases where existing medical evidence is inadequate to make a disability determination, either because it is internally conflicting, is incomplete, or is based on unconventional or questionable diagnostic techniques.

In this case the ALJ gave weight to certain aspects of the opinions of the treating physician and the CE in formulating his RFC finding.  The ALJ also appropriately considered other evidence in the record, including Plaintiff's testimony and her subjective allegations and the opinions of the state agency medical consultants.  I find that there was adequate evidence in the record upon which

to base the disability determination. Therefore, the ALJ did not err by failing to recontact either the treating or consultative physicians.

**C.      Whether the ALJ erred in considering Plaintiff's subjective allegations of disabling pain and in making his credibility determination.**

Plaintiff argues that the ALJ erred in making his credibility determination as to her subjective complaints of disabling pain.  Pursuant to SSR 96-7p, the adjudicator is required to go through a two-step process in evaluating a claimant's symptoms.  The ALJ must first:

> consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms. . . . Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p.

The ALJ may consider various factors in assessing a claimant's credibility, including the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any palliative measures used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id.*

In this case the ALJ found that Plaintiff did have a medically determinable impairment that could reasonably have been expected to cause the pain and functional limitations alleged. Tr. 13. However, the ALJ did not find that Plaintiff's testimony as to disabling pain was entirely credible.

First, Plaintiff correctly argues that pain may be disabling. A claimant's testimony of pain is insufficient to establish disability. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."). The ALJ's assessment of the disabling nature of the claimant's pain is due considerable deference. *Chambliss*, 269 F.3d at 522. For pain to rise to the level of disabling, that pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Id.*; *accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Subjective complaints of pain must be corroborated by objective medical evidence. *Chambliss*, 269 F.3d at 522 (*citing Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989)). Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence. *Chambliss,* 269 F.3d at 522 (*citing Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991)).

The ALJ may discount subjective complaints of pain as inconsistent with other evidence in the record. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren*, 925 F.2d at 128 (citation omitted)).

The subjective testimony of Plaintiff must be weighed against the objective evidence of medical diagnosis. *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987) (citing *Jones v. Heckler*, 702 F.2d 616, 621 n.4 (5th Cir. 1983). Subjective evidence need not take precedence over objective evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir 1988)). Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence. *Villa*, 895 F.2d at 1024 (citing *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987)).

Here, the ALJ extensively discussed the objective evidence and subjective allegations regarding Plaintiff's pain.  The ALJ compared Plaintiff's reports of her symptoms and limitations with the physical and objective findings of the treating and consultative physicians.  He noted certain inconsistencies in Plaintiff's testimony, such as the reasons given for quitting work, her ability to walk up to six blocks, and her ability to handle small objects.  The ALJ noted that upon physical examination, Plaintiff exhibited muscle spasm. Tr. 13.  However, he also noted that the x-rays were essentially normal, and other limitations were not reflected in her progress notes.  The ALJ appropriately weighed the objective evidence against the medical findings and Plaintiff's reports of her own activities.  The record demonstrates that the ALJ complied with the requirements of SSR 96-7p in assessing Plaintiff's pain and in making his credibility determination.

SSR 96-7p notes that in making the credibility determination, the ALJ may consider "the medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work."   The ALJ is also instructed to consider the entire record. SSR 96-7p. The ALJ's opinion demonstrates that he appropriately considered and discussed the record as a whole, as well as Plaintiff's specific subjective allegations as to the disabling nature of her pain in making his credibility determination.  While Plaintiff argues that the record does not demonstrate that she ever did a martial arts class and testified that she only attempted to walk six blocks and it took her six hours, the ALJ's opinion demonstrates that  he appropriately considered the record as a whole in making his credibility finding.  His credibility determination is supported

by substantial evidence in the record.  The ALJ did not err in considering the evidence of pain, including Plaintiff's subjective allegations, in the record.

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections on or before March 27, 2007.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation on or before March 27, 2007, shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 13th day of March, 2007.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**